## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

LEROY BATES                                CIVIL ACTION NO. 11-CV-1930

VERSUS                                          JUDGE DOHERTY

MICHAEL J. ASTRUE,                        MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL SECURITY

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the decision of the Commissioner be AFFIRMED.

### Background and Commissioner's Findings

On August 12, 2009, Leroy Bates filed a Title II application for a period of

disability and disability insurance benefits.  On the same day, he also filed a Title

XVI application for supplemental security income benefits, alleging disability

beginning December 31, 2008.  The agency initially denied his application, and

Bates  requested a hearing before an Administrative Law Judge.  His request was

granted, and a hearing was conducted on September 16, 2010, in Lafayette,

Louisiana before ALJ Steven C. Graalmann. [Tr. 21-41[1]] On October 26, 2010,

---

[1]The transcript of the administrative hearing and evidence introduced at the hearing are made
a part of the record at Rec. Doc. 6-1.  Pages are numbered at the bottom right corner, and
transcript/record references will be made in this document as Tr. ___.

ALJ Graalmann issued a decision, denying the claim. [Tr. 11-17]  On November 3, 2011, Leroy Bates filed the instant Complaint in this court, seeking judicial review of the ALJ decision pursuant to 42 U.S.C. §405(g). [Rec. Doc. 1] He is represented by counsel on this appeal.

### APPLICABLE  LEGAL STANDARDS  AND  SCOPE OF REVIEW

Any individual, after any final decision of the Commissioner of Social Security in which he was a party may obtain a review of the decision by a civil action. 42 U.S.C. §405(g). This court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision.  *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).  The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible, and any findings of fact by the Commissioner that are supported by substantial evidence are conclusive and must be affirmed.  *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir. 2005); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

'Substantial evidence' is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than

-2-

a preponderance.  *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel,* 239 F.3d at 704.  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.  *Singletary v. Bowen*, 798 F.2d at 823. In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo,*  or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

-3-

*Disability* is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). *Substantial gainful activity* is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. §404.1572(a)-(b).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential analysis, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

If the Commissioner determines that the claimant is disabled at any step, the analysis ends.  20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make a determination at any step, he goes on to the next step.  20 C.F.R. § 404.1520(a)(4). When assessing a claim for disability benefits in the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  *Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S.Ct. 885, 107 L.Ed.2d 967(1990).  If the claimant is not actually working and his impairments match or are equivalent to one of the listed impairments, the Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §423(d)(2)(B).  The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment. *See Zebley*, 493 U.S. at 531, 110 S.Ct. 885.  It is the claimant's burden to prove at step three that his impairment or combination of impairments matches or is equivalent to a listed impairment. *Id.* at 530-31.  For a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must meet all of the specified medical criteria. An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify. *Id.*  Ultimately, the question of equivalence is an issue

-5-

reserved for the Commissioner.  *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). This is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 CFR § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work. 20 CFR § 404.1520(e).  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work.  *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132(5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

Details of the claimant's employment history appear in the record in several places, including the testimony of Leroy Bates during the administrative hearing, discussed at length below.  He has worked as a construction company laborer and as a utility worker for the City of Crowley. He described those jobs to include concrete work and general construction labor, trimming trees and cutting grass for city properties [Tr. 104]  The claimant also provided information about his educational background.  He can read, write, speak and understand English and completed ninth grade.  He finishes what he starts, and he can follow spoken instructions. [Tr. 102, 107, 119] He can pay bills, count change, and use a checkbook/money orders. [Tr. 117] He spends time with others daily, and he has no problems getting along with family, friends, or authority figures.  He has no

-7-

problem handling stress and changes. [Tr. 118-120]  He has not worked since December 31, 2008. [Tr. 103]

Bates alleges he is disabled by vision impairment (missing an eye), prostate and colon problems.  He does not wear eyeglasses or contact lenses, alleging he cannot afford them. [Tr. 120, 132]  He alleges he cannot stand or walk for long periods of time due to stomach pains, and he cannot lift anything due to a hernia and stomach problems. [Tr. 103, 119, 126] He alleges he cannot read the newspaper or play dominoes due to his vision problems, and he cannot go out after dark. [Tr. 128]  He has been seen by healthcare providers for these conditions; he has not been treated for any mental/emotional problems. [Tr. 105]

Medical treatment documented in the record includes the claimant's visits to University Medical Center in Lafayette, Louisiana.[2]  On August 12, 2009, Bates was seen with complaints of abdominal pains; he was taking no medications at the time.  He gave a history of diverticulitis and hiatal hernia.  A diagnostic impression of gastritis, hiatal hernia, diverticulitis and hypertension were recorded based on history.  Bates was instructed to return in four months. [Tr. 140-143, 165-167] On December 7, 2009, Bates returned to UMC, with the same

---

[2]Although the claimant has referenced treatment at American Legion Hospital in Crowley, Louisiana, that facility reported that no medical records were found for the time period requested (12/07 to present). [Tr. 144-46]

-8-

complaints.  Records indicated that his lower abdominal pain was relieved on urination or bowel movement. A plan for continued treatment was recorded, and Bates was instructed to return in four months.[Tr. 153-164]   On April, 12, 2010, Bates returned to UMC with complaints of tooth pain and abdominal pain. He was taking no medication.  The focus of treatment was on his dental complaint. [Tr. 187-189]  On June 20, 2010, the claimant returned to UMC with complaints of lower abdominal/right side chest pain. [Tr. 184-186] He was referred to the surgery clinic and instructed to return in four months.  There are no other medical treatment records in the file.

On December 18, 2009, the claimant's medical records were reviewed and assessed by medical consultant Dr. Charles Lee, who completed a Physical Residual Functional Capacity Assessment. [Tr. 170-177] Dr. Lee noted a primary diagnosis of hypertension, with secondary diagnoses of recurrent gastritis and hiatal hernia.  He completed Form SSA-4734-BK to indicate that Bates could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; and stand/walk/sit about six hours in an 8-hour workday (with normal breaks).  He referenced no postural, manipulative, communicative, or environmental limitations.  He found the claimant's allegations to be partially credible, and he

indicated that Bates should be able to perform all routine self-care chores, cooking, shopping and housework.

In January, 2010, a visual examination/evaluation was conducted by Dr. Jack Miller, Jr. [Tr. 178-181] He took a history from the claimant of right eye blurred vision and absence of vision in the left eye due to a shooting accident. Bates wore no glasses.  On examination, Dr. Miller recorded vision of 20/64 in Bates' right eye, without correction.  With best correction, the vision was 20/25. The report noted high false negative reports by the claimant. [Tr. 179] Dr. Miller diagnosed traumatic cataract, with poor prognosis in the left eye, with an excellent prognosis for correction in the right eye.  He opined that the claimant could read fine and large print, handle and work with large objects and avoid people approaching from the side.  He opined that Bates could not drive an automobile, operate machinery or avoid objects in workplace pathways. [Tr. 179] Also in January, 2010, the report of Dr. Miller was provided to Dr. James Murtagh, with the request that he assess the claimant's visual limitation/restrictions on the RFCF. Dr. Murtagh completed Form SSA-416 and indicated that the corrected vision results from Dr. Miller in the claimant's normal right eye warranted the finding that Bates's vision issues are not severe, with no limitations visually. [Tr. 182-183]

-10-

*The Administrative Hearing:*

The administrative hearing began with the introduction, without objection, of documentary evidence into the record. [Tr. 24] Leroy Bates responded to questions from the ALJ and his attorney representative.  As of the hearing date, he was 54 years old, with a birth date of June 16, 1956. He is 5'8" tall and weighed 201 pounds. [Tr. 24] He has a ninth grade education, holds a driver's license and is able to drive except at night. [Tr. 25, 30] He last worked in 2009 as a concrete labor hand, a position he had held for about five years before being laid off. [Tr. 26, 28] He also worked for the City of Crowley as a laborer in different departments over 10-12 years. [Tr. 26-27] In the years prior to that employment, he held similar laborer positions with other contractors. [Tr. 27, 36-37]  At some point, years ago, when he was first blinded in his left eye from a shotgun blast, Bates was drawing disability, but he gave up those benefits to go to work, and he was employed since then until 2009. [Tr. 37]

Bates described his primary physical problem to be bad daily stomach pain, aggravated by things he eats. [Tr. 28-29, 32] He also described complete blindness in his left eye for the past 10-12 years, which has not interfered with his ability to work, and the more recent development of near-daily headaches. [Tr.  29, 33, 35-36] He has also had a plate in his head since a childhood accident. [Tr. 36] He

takes no prescribed medications. [Tr. 31] He takes over-the-counter medication, which partially relieves his complaints.  He has not been hospitalized in the last year.[Tr. 31-32] As of the hearing date, the claimant reported that he could walk about a block or two before having to turn around. He has occasional problems standing, but no problem sitting. [Tr. 32] He can lift a gallon of milk; he has no problems using his hands, and he gets along fine with everyone. [Tr. 33] Per the claimant, if he was not bothered by stomach pain and headaches, he "most probably could do anything." [Tr. 33, 35] He washes clothes, cooks, shops, and cares for himself.  He spends his time watching television and visiting with family. [Tr. 29-30] In response to questions from his attorney, Bates indicated that his primary medical treatment has been through University Medical Center, for treatment of a hernia in his stomach which has been present for 3-4 years.  In June, 2010, he was referred to the surgery clinic at UMC. [Tr. 34-35]

William Stampley was called by the ALJ as a vocational expert, without objection by the claimant's attorney.  He confirmed his understanding of his role as a witness and his review of the claimant's file. [Tr. 38] He further confirmed his familiarity with the terms sedentary, light, medium and heavy work and unskilled, semi-skilled and skilled as defined by Social Security. [Tr. 38]

The VE explained his efforts to review the claimant's vocational history to identify work that he has performed and the exertion/skill levels of that work. Bates held three relevant work positions in the past 15 years, according to the expert.  He worked at a rice mill/grain dryer, a position considered to be heavy, unskilled work. [Tr. 39] He worked for the City of Crowley for ten years in a position the VE described as a landscape specialist, considered medium, unskilled work.  He has done construction work, pouring and finishing cement, considered very heavy, unskilled work. [Tr. 39]

The expert was asked by the ALJ to assume a person of the same age, education and vocational experience as the claimant, who would be limited to light work, with the additional limitations that he avoid working at heights or in hazardous work environments.  With those assumptions, the VE opined that such a person would be unable to return to his past work, since it was heavier than light work. [Tr. 39-40] When asked if there is other work in the national economy such a person could perform, the VE described the position of assembler of small products (light, unskilled work), with 387,655 available positions in the United States, 3,880 in Louisiana. [Tr. 40] He also described the positions of bagger in a laundry setting, which is light, unskilled work (225,405 in U.S.; 1,464 in La.) and cleaner/housekeeping, considered light, unskilled work (445,503 in U.S.; 6,832 in

La.). [Tr. 40] The ALJ asked a second hypothetical question of the VE to include the expanded assumption that because of his condition, the claimant would miss work on an irregular basis, at least 3 days a month.  With that additional limitation, the VE opined that there are no jobs in the national economy such a person could perform. [Tr. 40]

At the close of the hearing, the ALJ expressed his intention to review the entire file for Leroy Bates.  There was no request that the record be kept open for additional information or evidence.

**_The Determination of the ALJ:_**

The record  demonstrates that the ALJ followed the requisite five step sequence in analyzing the claims of Leroy Bates.  The ALJ found at step one that the claimant has not engaged in substantial gainful activity since December 31, 2008, the application date. [Tr. 13] At step two, the ALJ determined that Bates has the severe impairments of blindness in the left eye and abdominal problems (20 C.F.R. §§404.1520(c) and 416.920(c)). [Tr. 13]  This finding is supported by the record and has not been challenged by the claimant.  At step three, the ALJ determined that the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 C.F.R. §§ 416.920(d), 416.925, and

416.926).  He noted that the claimant has not asserted that he has such an

impairment, and he found no evidence in the record to suggest that Bates has such

an impairment.  He found that the claimant had failed to meet his burden of proof

at step three. [Tr. 13] The claimant has not challenged this finding, and it is

supported by the record.  The ALJ then, after considering the entire record, found

that the claimant has the residual functional capacity (RFC) to perform light work

as defined in 20 C.F.R. §§404.1567(b) and 416.967(b), except that Bates must

avoid heights and working in dangerous environments. [Tr. 14] The ALJ

explained in detail his considerations in making the RFC finding, including his

determination that Bates' medically determinable impairments could reasonably be

expected to cause his alleged symptoms, however his statements concerning the

intensity, persistence and limiting effects of the symptoms are not credible to the

extent they are not consistent with the RFC. [Tr. 14] The ALJ explained his

finding that the claimant's subjective allegations and the medical evidence of

record do not support a finding of disability, noting that there is no objective

evidence in the record of either a hiatal hernia or diverticulitis, as described by the

claimant, and the claimant takes no prescribed medications. [Tr. 15] As to the

claimant's partial blindness, he cited to the consultive examination report of Dr.

Jack Miller, who confirmed a traumatic cataract in the left eye, with poor

-15-

prognosis, but nevertheless noted the claimant could read fine and large print, work with large objects, and avoid people approaching from the side.  He reported that Bates could not drive, operate machinery or avoid objects in workplace areas. [Tr. 15] Finally, the ALJ cited to opinion evidence in the State agency record, which assessed Bates' residual functional capacity as medium, with no limitations. No other medical opinions are contained in the record regarding the claimant's abilities or limitations. In sum, the ALJ found that the RFC is supported by the claimant's subjective allegations, the medical evidence of record and the testimony of the vocational expert. [Tr. 15] The claimant challenges the RFC finding as discussed below.  At step four, the ALJ found that Bates is unable to perform any of his past relevant work, since it exceeds the RFC, requiring that the analysis proceed to step five. [Tr. 15] At that step, the ALJ found that after considering his age, education, work experience, and the RFC, there are nevertheless jobs existing in significant numbers in the national economy that the claimant could perform. [Tr. 15] The claimant challenges this finding.

## ASSIGNMENT OF ERRORS

The claimant asserts that there is no substantial evidence in the record to support the ALJ's conclusion that Leroy Bates could perform jobs in the light category on a sustained basis, when the ALJ acknowledged that the range of light

work was eroded.  Specifically, he asserts that (a) the ALJ failed to meet the step five burden to prove that there are significant jobs available in the light category for the claimant to perform; and (b) the ALJ erred in failing to consider the claimant's inability to work on a sustained basis. [Rec. Doc. 8, p. 2]

**_The ALJ's Decision is supported by substantial evidence._**

The task of weighing the evidence is in the sole province of the ALJ.  See _Chambliss v. Massanari_, 269 F.3d 520, 523 (5th Cir. 2001).  It is well-settled that the ALJ need not give greater weight to a claimant's subjective complaints than to the objective medical evidence.  _Falco v. Shalala_, 27 F.3d 160, 164 (5th Cir. 1994). Further the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged symptoms/limitations and the evidence as a whole.  _Vaughn v. Shalala_, 58 F.3d 129, 131(5th Cir. 1995).  On the issue of the claimant's credibility, the ALJ found that Bates' medically determinable impairments could reasonably be expected to produce his alleged symptoms.  Consequently, the ALJ was required to evaluate the  intensity, persistence, and limiting effects of his symptoms.  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p, *1  The regulations state:

The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 96-7p, *4.

The Fifth Circuit has held that although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow formalistic rules in his articulation." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). In this case, the ALJ clearly questioned some of the claimant's representations and subjective reports. He cited to the fact that Bates takes no prescribed medications and the disparity between the claimant's subjective complaints and the objective medical evidence, noting that while the claimant "may have a hiatal hernia or diverticulitis," there is no real objective evidence of either condition in the record. [Tr. 15] He also noted the finding that the claimant was only "partially credible" by Dr. Lee. [Tr. 15] The undersigned finds that the ALJ's narrative was sufficient on this issue.

To make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988); citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Applying that standard, the undersigned finds that the decision is based on substantial evidence.

-18-

***The ALJ properly conducted the step five analysis.***

The use of a vocational expert is appropriate when the analysis moves to step five and a determination must be made of whether the claimant's skills can be used in other work and of what other specific jobs are possible for the claimant and available to him. 20 CFR §404.1566(e).  The record demonstrates that the ALJ did not accept the notion that Leroy Bates could perform work in the medium duty category, as suggested by Dr. Lee, and he recognized that Bates' ability to perform light work has been impeded by additional limitations, which he set out in the RFC. He correctly proceeded to determine the extent to which those limitations erode the unskilled light occupational base by questioning the VE with hypothetical questions during the hearing, which questions were consistent with the residual functional capacity (RFC) set out in the determination--that Bates could perform light work, except he should avoid heights and working in dangerous environments. [Tr. 14, 39-40] In response, the VE testified to list three light employment positions existing in the national and state economies which Bates could perform, accommodating those limitations:  assembler of small products (light, unskilled work; 387,655 in U.S.; 3,880 in La.); bagger in a laundry setting (light, unskilled work; 225,405 in U.S.; 1,464 in La.) and cleaner/housekeeping (light, unskilled work; 445,503 in U.S.; 6,832

in La.). [Tr. 40] The claimant offered no evidence that he could not perform the alternate employment positions as described.

The second hypothetical phrased by the ALJ, including the added limitation that the claimant would irregularly miss at least three days of work per month would make the claimant unemployable according to the VE. [Tr. 40] There is, however, no evidence in the record to support that limitation, which is not included in the RFC. Only the question which posed the hypothetical containing the elements of the ALJ-determined RFC needed to be asked, and the ALJ is not bound by vocational expert testimony which is based upon hypothetical assumptions that are rejected by the ALJ. See *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).  The Fifth Circuit has held that an ALJ need only incorporate into the hypothetical questions posed to a vocational expert those claimed disabilities that are supported by the evidence and recognized by the ALJ.  Thus, it is not significant that the ALJ rejected the VE's testimony regarding the expanded hypothetical which included attendance limitations. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002)*;  Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

The regulations establish that work exists in the national economy "when there is a significant number of jobs (in one or more occupations) having requirements

which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. §416.966(b).  In this case, the VE described such positions, including the numbers in the national and Louisiana economies, meeting the step five burden.  The claimant has offered no evidence to rebut the step five finding, as he must. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.  The undersigned finds no fault with the ALJ's methods or step five conclusions.

### CONCLUSION AND RECOMMENDATION

It is well-established that "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176, *citing Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). As discussed above, this Court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021(5th Cir. 1990).  In the instant case, the record demonstrates that the proper legal standards were applied to consideration of Leroy Bates' claims, and the undersigned cannot conclude that the ALJ failed to base his determination on substantial evidence, that is evidence which is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel,* 239 F.3d  at 704.

Applying the appropriate review standard to the record of the instant case,

-21-

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 21st day of February, 2013.

Patrick J. Hanna
United States Magistrate Judge

-22-